```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RECOVERCARE, LLC, and                :
CAMBRIDGE TECHNOLOGIES, INC,         :
                                     :
          Plaintiffs,                :     CIVIL ACTION
                                     :
     v.                              :     No. 09-cv-2911
                                     :
JOHN FAIRWEATHER,                    :
                                     :
          Defendant.                 :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                    **September 1, 2009**

This case is now before the Court for resolution of Defendant's Motion to Dismiss Plaintiffs' Complaint or, alternatively, for Summary Judgment. For the reasons that follow, the motion is DENIED.

### **Factual Background**[1]

This dispute arises out of an alleged contractual relationship between Defendant John Fairweather and Plaintiffs RecoverCare and Cambridge Technologies ("Camtech"). Camtech is a wholly owned subsidiary of RecoverCare. The parties do not dispute that RecoverCare is a citizen of Pennsylvania, Camtech is a citizen of Maryland, and Defendant is a citizen of New Jersey.

---

[1] In line with a Fed. R. Civ. P 12(b)(6) Motion to Dismiss, all factual allegations are viewed in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).

1

Defendant worked for Plaintiffs from February 2004 until October 14, 2008, managing Plaintiffs' production, manufacturing, and sales.  Plaintiffs assert that over the course of his employment, Defendant held the titles of Senior Vice President of Operations for RecoverCare, Vice President of Operations for the Eastern Region for RecoverCare, and Senior Vice President-General Manager for Camtech.  Included as a duty in these positions was "the responsibility to ensure that all employees executed an Invention and Confidentiality Assignment Agreement . . . or an Employment Agreement that assigned inventions to the employer." (Compl. 3.)

In addition to an assignment of interest in all inventions, RecoverCare's Assignment Agreement contained provisions that prevented the use of any confidential information for five years after the conclusion of the employment relationship and that prevented the solicitation of customers for a period of twelve months following the termination of employment.  The Employment Agreement used by Camtech required the return of all confidential information and prohibited competition with the company for a period of three years.  Plaintiffs assert that all employees were required to sign one or both of these agreements in order to continue working for Camtech or RecoverCare.  Plaintiffs allege that Defendant informed RecoverCare that he had signed the Assignment Agreement and that Defendant informed Camtech that the

Employment Agreement was unnecessary because he had already signed RecoverCare's Assignment Agreement.  Plaintiffs relied on this representation and argue that Defendant is estopped from contesting the existence of these agreements.

After Defendant's resignation on October 14, 2008, Plaintiffs discovered that he had not executed an Assignment Agreement with RecoverCare, and on March 30, 2009, Defendant claimed that he had not been required, nor had he ever been asked, to sign any confidentiality or assignment agreement. Defendant also informed Plaintiffs that he would be pursuing a claim for royalties on many of Camtech's products that were developed during Defendant's employment.

Further, Plaintiffs charge Defendant with breaching the non-compete and non-solicitation provisions in the Assignment Agreement.  Plaintiffs allege that Defendant has already attempted to hire away a RecoverCare employee to form a competing venture, and that Defendant has informed Plaintiffs that he will continue to solicit Plaintiffs' employees and customers.

Finally, Plaintiffs allege that Defendant continues to possess some of Plaintiffs' property, including "(1) a laptop computer, (2) mobile phone, (3) EZ Pass transponder, (4) American Express card, and (5) proprietary and confidential information, documents, brochures, files and sample equipment."  (Compl. 8.) Plaintiffs state that they requested that Defendant return said

items, and that he refused.

In Count I, Plaintiffs request a declaratory judgment under the Pennsylvania Declaratory Judgment Act to clarify that Defendant is bound by the Assignment Agreement and Employment Agreement and that he is not entitled to any royalties for products developed during Defendant's employment.  Count II of Plaintiffs' Complaint seeks that Defendant be permanently enjoined from soliciting customers or employees in violation of the Employment and Assignment Agreements and that Defendant be directed to return all of Plaintiffs' property in his possession, and seeks damages for Defendant's breach of contract.  The third and final count of the Complaint levies a charge of Conversion against Defendant and seeks the return of all of Plaintiffs' property as well as damages for the conversion.

In his Motion to Dismiss, Defendant asserts that this court lacks subject matter jurisdiction due to an insufficient amount in controversy.  Defendant also argues that even if this Court does have jurisdiction over the matter, that the case should be dismissed because Plaintiffs fail to allege the existence of any valid contract, and, therefore, they have not stated a claim on which relief can be granted. Alternatively, Defendant moves for Summary Judgment and introduces documents to show that Defendant was never an employee of either Plaintiff and, therefore, there is no genuine issue of material fact that needs to be resolved as

all of Plaintiffs' claims rest on Defendant's status as an employee.

## Standard

A. <u>12(b)(1) Motion to Dismiss</u>

Fed. R. Civ. P. 12(b)(1) allows a court to dismiss a case for lack of subject matter jurisdiction.  28 U.S.C. § 1332(a)(1) grants the federal district courts original jurisdiction in civil actions between citizens of different states in which the amount in controversy exceeds $75,000.  The burden of establishing the existence of subject matter jurisdiction falls on the party asserting jurisdiction.  <u>Boyer v. Snap-On Tools Corp.</u>, 913 F.2d 108, 111 (3d Cir. 1990).  For purposes of the amount in controversy, claims of one plaintiff against one defendant can be aggregated to reach the minimum amount in controversy requirement.  <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 588 (3d Cir. 1997).  In addition, when multiple plaintiffs have a "common and undivided interest," they may join together in asserting their claims so long as the rights are held "in group status." <u>Hayfield v. Home Depot U.S.A., Inc.</u>, 168 F. Supp. 2d 436, 449 (E.D. Pa. 2001).

B. <u>12(b)(6) Motion to Dismiss</u>

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if the plaintiff has failed to "state a claim on which relief can be granted."  In evaluating a motion to dismiss, the

court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 283, 286 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

    C.   12(d) Motion to Dismiss and Summary Judgment

Under Fed. R. Civ. P. 12(d), when a party presents matters outside of the pleadings along with a motion to dismiss, the filing is treated as a motion for summary judgment and governed by Fed. R. Civ. P. 56. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In order to survive a motion for summary judgment, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the non-moving party must raise more than "some metaphysical doubt" as to a material fact. Matsushita, 475 U.S.

6

at 586.  In making a decision as to whether there is a "genuine" issue of fact, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## Discussion

   A.  12(b)(1) Motion to Dismiss

When determining whether the amount in controversy exceeds $75,000, the plaintiff's good-faith claim controls unless it is clear "to a legal certainty" that the plaintiff will not be able to recover the claimed amount.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).  In cases where the plaintiff is seeking equitable relief, the amount in controversy is determined by looking to the value of the property right that is allegedly being injured.  Schering Corp. v. Sun Ray Drug Co., 320 F.2d 72, 75 (3d Cir. 1963); John B. Kelly, Inc. v. Lehigh Navigation Coal Co., 151 F.2d 743, 746 (3d Cir. 1945). Importantly, it is not the value of the alleged loss to that property right that is the measure of the amount in controversy, but the full value of the impinged property right.  Schering Corp., 320 F.2d at 75.  In making a determination as to the worth of the property right, all valuations must be made from the plaintiff's viewpoint.  Pierson v. Source Perrier, S.A., 848 F. Supp. 1186, 1189 (E.D. Pa. 1994).

Additionally, in pleading unliquidated damages, a plaintiff shall not make "any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the court." Local R. Civ. P. 5.1.1. To be sufficient to provide this Court with jurisdiction, the claim must be based on an amount that reasonably could be awarded by a jury. Werwinski v. Ford Motor Co., 286 F.3d 661, 667 (3d Cir. 2002).

Plaintiffs' Complaint adequately establishes that this Court has jurisdiction due to the diversity of the parties. The parties do not dispute that there is complete diversity of citizenship in this case, as RecoverCare is a Pennsylvania citizen, Camtech is a Maryland citizen, and Defendant is a New Jersey citizen. The disagreement arises in regard to whether Plaintiffs meet the minimum threshold of $75,000 in controversy. As an initial matter, Plaintiffs have a common and undivided interest in this litigation as Defendant worked for both companies, and Camtech is a wholly owned subsidiary of RecoverCare. As such, RecoverCare and Camtech have a group interest in the alleged contract as well as the allegedly converted property. In examining the amount in controversy, therefore, Plaintiffs need not each establish separate claims valued in excess of $75,000 in order to support jurisdiction. So long as Plaintiffs' Complaint is found to allege sufficient

damages, jurisdiction will be proper for both.

Plaintiffs allege several contractual violations and seek a number of remedies for these breaches.  First, Plaintiffs seek money damages for breach of contract.  At this point, actual damages that were suffered from any breach appear to be quite small, as Defendant has not yet successfully solicited any customers or employees from Plaintiffs.  This claim, therefore, will likely not contribute substantially toward the amount in controversy.  Plaintiffs also seek damages for the conversion of their property.  Included in the converted property are several discrete physical items as well as "proprietary and confidential information, documents, brochures, files and sample equipment." (Compl. 8.)  Although the combined value of a laptop computer, mobile phone, EZ Pass transponder, and American Express card certainly is not $75,000, it is more difficult to assign a dollar amount to the value of the proprietary and confidential information.  Given, however, that Plaintiffs' annual revenues are approximately $90 million, a jury reasonably could decide that this information is worth a substantial amount.

Plaintiffs also seek a declaratory judgment and an injunction to make clear that Defendant is not owed any royalties and to enforce the non-compete and non-solicitation clauses of the contract.  Again, the value of these claims is difficult to pin down, and cannot readily be assigned a dollar amount.

Although Plaintiffs attempt to value the declaratory judgment at over $459,000 by pointing to Defendant's claims, this value is not controlling as it represents the value of the declaratory judgment to the Defendant and not to Plaintiffs.  As noted above, all valuations must be made from Plaintiff's viewpoint when assessing the amount in controversy.  Again, however, it is difficult to determine the value of a declaration that Plaintiffs do not owe Defendant money for any potential royalties claim.  What is clear, however, is that Plaintiffs' interests in the enforcement of the contract are substantial.  Plaintiffs allege that Defendant possesses confidential and proprietary information about Plaintiffs, and that he occupied positions of trust and confidence within both companies.  By performing the work that he did, Defendant would have a strong competitive advantage in the relevant market, and could seriously harm Plaintiffs.  Given the nature of the parties' relationship and the nature of Plaintiffs' allegations, Plaintiffs' property rights in the contract could well be worth far more than $75,000.

Because it is not clear to a legal certainty that the amount in controversy is below $75,000, Plaintiffs' good-faith allegation as to the amount in controversy must control.  Plaintiffs have alleged that the amount in controversy is over $75,000, and have presented sufficient facts to make such a claim plausible.  This is sufficient to provide this Court with

jurisdiction over the case.

    B.  <u>12(b)(6) Motion to Dismiss</u>

Plaintiffs have properly stated a claim on which relief can be granted in each count of their Complaint, and have made sufficient factual allegations to allow all three counts to survive a motion to dismiss.

**Count I**

A plaintiff may seek a declaratory judgment to clarify the relationship between the parties to a contract. Under Pennsylvania's Declaratory Judgment Act, 42 Pa. C.S.A. § 7531 <u>et seq.</u>, a party can seek a declaration of his rights under a contract, and can do so either before or after a breach of the contract occurs. <u>Id.</u> §§ 7533-34. Further, "a declaratory judgment proceeding is a proper form of action in which to determine the validity of a restrictive covenant of employment." <u>Geisinger Clinic v. DiCucio</u>, 606 A.2d 509, 519 (Pa. Super. Ct. 1992). A declaratory judgment action is not proper, however, if the plaintiff has not established that "an actual controversy exists, is imminent or inevitable." <u>Pa. Tpk. Comm'n v. Hafer</u>, 597 A.2d 754, 756 (Pa. Commw. Ct. 1991).

Plaintiffs have stated a claim on which relief can be granted with their request for a declaratory judgment. Plaintiffs have identified an alleged contractual agreement and a dispute over said agreement. (Compl. 3-5.) In addition,

11

Plaintiffs note that Defendant has made clear that he does not consider himself bound by the agreement and that he plans, and has already begun, to pursue a course of action at odds with the alleged agreement. (Id. at 6, 9-10.) This is enough to establish that the dispute is not purely hypothetical, and, therefore, to state a claim on which relief can be granted pursuant to Pennsylvania's Declaratory Judgment Act.

**Count II**

To state a claim for breach of contract, the plaintiff must demonstrate the existence of a contract, a breach of that contract, and damages resulting from the alleged breach. Galko v. Harleysville Pennland Ins. Co., 71 Pa. D. & C.4th 236, 253 (Pa. C.P. Lackawanna County 2005). An enforceable contract requires a mutual agreement between the parties, the exchange of consideration, and that the agreement's terms are delineated with a sufficient degree of clarity. Weavertown Transp. Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003). If the parties agree to all material terms and only have a formalization remaining, a binding contract is formed; the focus is on the mutual agreement and an intent to be bound by the agreement. Field v. Golden Triangle Broad., Inc., 305 A.2d 689, 693-94 (Pa. 1973); Jenkins v. County of Schuylkill, 658 A.2d 380, 383 (Pa. Super. Ct. 1995).

Even if the plaintiff cannot establish the existence of a

valid contract, the claim is not defeated if the elements of promissory estoppel are met. Such a claim requires that the promisor's act, representation, admission, or silence be reasonably expected to induce reliance, that this statement actually does induce detrimental reliance on the part of the promisee, and that justice requires that the promise be enforced. Crouse v. Cyclops Industries, 745 A.2d 606, 610 (Pa. 2000). The inducing statement or omission must be made either with the intent to induce reliance or with culpable negligence. In re Tallarico's Estate, 228 A.2d 736, 741 (Pa. 1967). Importantly, the reliance must be due to the conduct of the promisor, and cannot be the result of the judgment or interpretation of the promisee. Liberty Prop. Trust v. Day-Timers, Inc., 815 A.2d 1045, 1050 (Pa. Super. Ct. 2003).

Plaintiffs have successfully stated a claim on which relief can be granted for breach of contract. First, Plaintiffs have sufficiently stated facts that would give rise to a promissory estoppel claim. (Compl. 3-4.) Second, Plaintiffs have alleged both that Defendant failed to return several items of property, as required by the agreement, and that Defendant has engaged in a course of conduct that violates the contract. (Id. at 6-7, 9.) Finally, Plaintiffs have claimed that these violations caused, and will continue to cause, damage in various ways. (Id. at 10.) This completes the prima facie case for a breach of contract

action, and allows the count to survive a motion to dismiss.

**Count III**

Finally, a claim for conversion requires that the plaintiff prove that he has a possessory right to the chattel, that the defendant engaged in intentional, wrongful conduct resulting in the exercise of dominion and control over the chattel by the defendant, and that the defendant's conduct led to such a serious deprivation of the plaintiff's possessory rights that it warrants the payment of the full value of the chattel as damages. Spickler v. Lombardo, 3 Pa. D. & C.3d 591, 600-02 (Pa. C.P. Somerset County 1977). In effect, an action for conversion seeks to produce a forced sale of the chattel from the plaintiff to the defendant. See McMunn v. Upperman, 83 Pa. D. & C.4th 103, 116 (Pa. C.P. Lawrence County 2006).

Count III also contains a claim on which relief can be granted. Plaintiffs have identified several specific items of their property that they claim Defendant has in his possession. (Id. at 8.) Plaintiffs also allege that Defendant has intentionally and wrongfully retained possession of this property, even following a demand for its return. (Compl. 10.) This is sufficient to allow Count III to survive a motion to dismiss.

  C. <u>12(d) Motion to Dismiss and Summary Judgment</u>

Plaintiffs' Complaint in conjunction with their supporting

documents demonstrate that genuine issues of material fact remain in this case, and, therefore, Summary Judgment would be improper at this stage.  Defendant introduces additional evidence in order to establish that he was not an employee for either Plaintiff, and that, therefore, all claims that were based on his status as an employee should be dismissed.  As Plaintiffs note, however, "whether he was an independent contractor or an employee for tax purposes is irrelevant to Plaintiffs' claims."  (Resp. in Opp'n to Def.'s Mot. to Dismiss 18.)  Plaintiffs' claims center on an alleged contractual agreement and not on any inherent status that arises from an employer-employee relationship.  Although Plaintiffs' Complaint does state that all employees were required to sign either the Employment Agreement or the Assignment Agreement, it does not claim that those classified as employees were the _only_ individuals required to sign such an agreement, nor does Plaintiffs' Complaint appear to use the term "employee" in as narrow a sense as used by Defendant in his Motion to Dismiss.  Further, Plaintiffs have introduced Certifications and an Affidavit to bolster the assertions made in their Complaint, thereby providing sufficient evidence for a fair-minded jury to return a verdict for Plaintiffs.  Given the current state of the pleadings and additional evidence introduced by the parties, there certainly remain genuine issues of material fact that must be determined in regards to the existence of a contract, as well

as the terms of any agreement.  Summary Judgment, therefore, is inappropriate at this stage.

## **Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss the Complaint, or, alternatively, for Summary Judgment is DENIED.  An appropriate order follows.